In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00067-CR
______________________________


JOSUE VILLAREAL PEREZ, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 184th Judicial District Court
Harris County, Texas
Trial Court No. 912362


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Convicted of rape by force and imprisoned since 1980, Josue Villareal Perez was released
under mandatory supervision on August 31, 2001, and assigned to live at the Reid Community
Correctional Facility, a Houston halfway house. Although Perez initially complied with the
conditions of his release, including registering as a sex offender and submitting to wear an ankle
monitor, he left the Reid facility on October 4, 2001, removed the monitor, and failed to notify the
authorities of his whereabouts. Only after Perez was arrested on October 15, 2001, did he meet again
with his parole officer—this time in jail. 
            Perez was indicted for failure to comply with sex offender registration requirements, and a
Harris County jury subsequently found him guilty as charged, assessing punishment at thirty-seven
years' confinement. Perez now appeals, contending (1) the evidence is legally and factually
insufficient, (2) the trial court erred by admitting evidence in violation of its own discovery order
and in conflict with a prior ruling, (3) the court erred by denying a request to include an instruction
on necessity in the jury charge, and (4) the sex offender registration laws violate the ex post facto
clauses of the United States and Texas Constitutions. 
Sufficiency of the Evidence
            Perez contends in his first and second points of error that the evidence presented at trial was
both legally and factually insufficient to support his conviction. In evaluating legal sufficiency, we
view the evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 318–19 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
When reviewing the factual sufficiency of the elements of an offense, however, we view all the
evidence in a neutral light and "set[] aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust." Johnson v. State, 23 S.W.3d 1, 6–7 (Tex.
Crim. App. 2000) (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)).
            Conceding he was required to register as a sex offender, Perez nevertheless argues that he
fulfilled his obligations under Chapter 62 of the Texas Code of Criminal Procedure and that there
is no evidence he committed the offense charged. That is, even though Perez admits he may have
been in violation of other reporting requirements, he maintains there is no evidence he intended or
anticipated leaving the Reid facility before he actually left.


 He reasons, therefore, that the evidence
cannot support his conviction under Article 62.04(a), which states in part:
If a person required to register intends to change address, . . . the person shall, not
later than the seventh day before the intended change, report in person to the local
law enforcement authority designated as the person's primary registration authority
by the department and to the . . . parole officer supervising the person and provide the
authority and the officer with the person's anticipated move date and new address.

Tex. Code Crim. Proc. Ann. art. 62.04(a) (Vernon Supp. 2004) (emphasis added).
            Reviewing the evidence in the light most favorable to the verdict, it is clear that a rational
trier of fact could have found beyond a reasonable doubt Perez intended to leave the Reid facility. 
The evidence demonstrates that, without first notifying the Houston Police Department or his parole
officer, Perez left the Reid facility October 4, 2001, removed the ankle monitor he was required to
wear under the terms of his release, and remained at large until his arrest October 15. The record
also indicates Perez never attempted to contact the authorities at any time before his arrest, either to
explain his absence or to inform them of his whereabouts. In light of this evidence, the jury
reasonably concluded Perez intentionally left the Reid facility and failed to report, in violation of
Article 62.04(a).
            Even when viewing the evidence in a neutral light, the jury's conclusion is reasonable. When
conducting a factual sufficiency review, we consider all of the evidence in the record, comparing the
weight of the evidence that tends to prove guilt with the evidence that tends to disprove it,
considering any reasonable hypothesis raised. See Fuentes v. State, 991 S.W.2d 267, 271 (Tex.
Crim. App. 1999); Richardson v. State, 973 S.W.2d 384, 387 (Tex. App.—Dallas 1998, no pet.). 
Perez does not dispute the facts discussed in the preceding paragraph, but argues he cannot have
violated Article 62.04(a) because he never anticipated moving. Instead, he claims to have departed
on the spur of the moment because he feared for his life after being robbed by other Reid facility
residents. 
            In support of this claim, Perez cites two letters written to his parole officer in the days
following his arrest. Although they do not support the claim that he fled because he feared for his
life, they do indicate Perez panicked when confronted with the possibility of returning to prison, at
least suggesting his flight was unanticipated. After Perez's altercation with the other Reid facility
residents, Perez remembered the shift captain saying he was going to call the police. Perez wrote
of his own response to this incident: "I panicked! I got so very afraid of being sent back to prison,
because I'm 45 years of age, and have already served all my life in there. So I ran, because I was
afraid of being sent back." While this post-arrest explanation provided at least some evidence that
Perez may not have anticipated leaving the Reid facility, it was well within the jury's discretion to
assess its credibility in light of the evidence presented by the State. Deferring to the jury's role as
the sole judge of the weight and credibility of the evidence presented at trial, we cannot conclude the
verdict was so contrary to the overwhelming weight of the evidence as to be wrong or unjust. 
Johnson, 23 S.W.3d at 6–7.
Admission of Evidence
            Perez argues in his third point of error that the trial court erroneously admitted evidence in
violation of an earlier discovery order and trial ruling. When the State attempted to introduce
evidence of an admission made to Perez's parole officer, which had been reduced to writing and kept
in Perez's parole file, Perez objected on the ground the State had violated the court's discovery order
by failing to earlier disclose the document in question. The trial court agreed and sustained the
objection. Moments later, however, the trial court overruled Perez's hearsay objection to the State's
attempt to elicit the same information from the parole officer by asking what Perez had admitted to
her before she reduced it to the excluded writing. Although the trial court did exclude the document
in question as a violation of its discovery order, the trial court still permitted Perez's parole officer
to use the document to refresh her memory before answering the State's question concerning Perez's
admission that he had relocated without permission. 
            Even if the trial court erroneously permitted Perez's parole officer to refresh her memory from
a document excluded under the court's own discovery order, we need not address the merits of this
complaint because Perez failed to request a continuance or postponement of trial. It is well
established that "[f]ailure to seek a continuance or postponement of the trial when the State allegedly
fails to fully effectuate discovery causing surprise waives any error." McQueen v. State, 984 S.W.2d
712, 718 (Tex. App.—Texarkana 1998, no pet.) (citing Lindley v. State, 635 S.W.2d 541, 544 (Tex.
Crim. App. 1982); Garner v. State, 939 S.W.2d 802, 804 (Tex. App.—Fort Worth 1997, pet. ref'd);
Mock v. State, 848 S.W.2d 215, 222 (Tex. App.—El Paso 1992, pet. ref'd)).
Denial of Necessity Instruction
            Perez contends in his fourth point of error that the trial court erred in denying his requested
jury instruction on the issue of necessity. In order for a criminal defendant to properly raise the
defense of necessity, however, he or she must not only admit to the action underlying the offense
charged, but also produce evidence at trial supporting the defensive theory that the charged conduct
was justified under the circumstances. Arnwine v. State, 20 S.W.3d 155, 158 (Tex.
App.—Texarkana 2000, no pet.). Although Perez did not directly admit his failure to report, it is
arguable he satisfied this first requirement by admitting in his letters to his parole officer that, when
faced with the possibility of being sent back to prison, he fled the Reid facility without first turning
to her for help.
 
            Even if we determined Perez's admission satisfied the requirement that he admit to the action
underlying the offense charged, he is still not entitled to an instruction on the defense of necessity
without presenting evidence his actions were justified. On the contrary, we note that the very
evidence he holds up as justification for his noncompliance with the requirements of the sex offender
registration program belies the claim he acted out of fear for his life, necessitating his departure to
avoid imminent harm. As previously mentioned, the letters Perez wrote to his parole officer after
his arrest indicate Perez panicked after an incident at the Reid facility; however, nothing in the letters
supports the assertion he fled because he feared for his life. Instead, Perez explained in his first letter
that he ran off because he feared being arrested and sent back to prison. Reiterating this explanation
in the second letter to his parole officer, Perez added: "I truly apologize to you for running off,
instead of turning to you for help. But to be honest, I was more afraid of you, and what you would
do to me, that I couldn't think of nothing but run and hide." 
            The content of these letters—the only evidence on which Perez relies to establish
necessity—is wholly inadequate to support his claim that the evidence met all of the conditions
required by Section 9.22 of the Texas Penal Code.


 As a result, there was no error in the trial court's
decision to omit such an instruction from the charge.
Sex Offender Registration
            Perez contends in his fifth point of error that his conviction and punishment under the sex
offender registration laws violates the ex post facto clauses of the United States and Texas
Constitutions. He essentially argues that, because the requirements of the sex offender registration
program were not enacted until after his 1980 conviction, the conviction underlying this appeal
amounts to a second punishment for the earlier offense, thus constituting an impermissible
application of the law.  
            Federal and state constitutional law absolutely prohibits the enactment of ex post facto laws,
U.S. Const. art. I, § 10; Tex. Const. art. I, § 16; Ieppert v. State, 908 S.W.2d 217 (Tex. Crim. App.
1995); however, the registration requirement for sex offenders is not an ex post facto law, Cooper
v. State, 2 S.W.3d 500, 503 (Tex. App.—Texarkana 1999, pet. ref'd).


 We have previously held that
the duty to register pursuant to a criminal registration statute is a collateral consequence of an
adjudication of guilt because it is remedial rather than punitive in nature. Id. Because the
registration requirement is not a form of punishment, it follows that ex post facto analysis does not
apply to its application. White v. State, 988 S.W.2d 277, 279 (Tex. App.—Texarkana 1999, no
pet.).



Conclusion
            We conclude, therefore, that (1) the evidence supporting Perez's conviction is legally and
factually sufficient, (2) no error was preserved concerning the State's alleged violation of the trial
court's discovery order, (3) there was no error in omitting from the jury charge an instruction on
necessity, and (4) the sex offender registration laws are not ex post facto laws. 
            Accordingly, we affirm the judgment of the trial court.
 

                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          January 26, 2004
Date Decided:             February 25, 2004

Do Not Publish