NO. 07-08-0140-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 13, 2009
______________________________

SMITH SERVICES, a business unit of SMITH INTERNATIONAL, INC.,
                                                      f/k/a SMITH CO., 

                                                                                                 Appellant

v.

GRINNELL CORPORATION, 

                                                                                                 Appellee
_________________________________

FROM THE 121ST DISTRICT COURT OF YOAKUM COUNTY;

NO. 8108; HON. KELLY G. MOORE, PRESIDING
_________________________________

Opinion
_________________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

          Smith Services, a business unit of Smith International, Inc., f/k/a Smith Co. (Smith)
appeals from two orders. The first is a final summary judgment denying it recovery against 
Grinnell Corporation (Grinnell). The second is an order granting Grinnell’s motion to strike
Smith’s second amended petition. We consider only the former since our resolution of it
is dispositive of this appeal. And, upon considering it, we affirm the judgment. 
          
          Background
          Timothy Scott was employed by Gray Wireline at a carbon dioxide injection well in
Yoakum County. While Scott was working, a metal swedge/hammer union came apart
resulting in his injury. A portion of the tool was made by Grinnell. Smith had acquired the
item for use by its employees. One of those employees, Cipriano Almager, had exchanged
the Smith swedge/hammer union with another owned by Gray Wireline. 
          Alleging a products liability claim, Scott sued Smith to redress his injuries caused
by the swedge/hammer.


 The two litigants eventually settled their dispute, but before it was
dismissed, Smith sued Grinnell for both statutory and common law indemnity. By way of
counterclaim, Grinnell sought indemnity from Smith. Competing motions for summary
judgment were filed and, after a hearing, the trial court granted that of Grinnell but denied
that of Smith. 
          A Seller Under Chapter 82
          The statutory indemnity provision underlying Smith’s claim is that found in Chapter
82 of the Texas Civil Practice and Remedies Code. Per that chapter, a manufacturer must 
indemnify and hold harmless a “seller” against loss arising out of a products liability action
except for any loss caused by the seller’s negligence, intentional misconduct, or other act
or omission. Tex. Civ. Prac. & Rem. Code Ann. §82.002(a) (Vernon 2005). Furthermore,
a “seller” is defined as one “who is engaged in the business of distributing or otherwise
placing, for any commercial purpose, in the stream of commerce for use or consumption
a product or any component part thereof.” Id. §82.001(3). According to Grinnell, Smith fell
outside the scope of the provision since it was not a “seller.” Nor was Smith an innocent
“retailer in the chain of distribution” for purposes of common law indemnity, according to
Grinnell. 
          According to the Supreme Court, the legislature intended that Chapter 82 provide
indemnity for all who stand in the position of a retailer. New Tex. Auto Auction Servs., L.P.
v. De Hernandez, 249 S.W.3d 400, 405 (Tex. 2008). This may be why it has said that the
term “seller,” under §82.001(3), connotes one “who commercially distributes a product.” 
SSP Partners v. Gladstrong Invs. Corp., 275 S.W.3d 444, 449 (Tex. 2008); accord, USX
Corp. v. Salinas, 818 S.W.2d 473, 489 (Tex. App.–San Antonio 1991, writ denied)
(involving common law indemnity and noting that indemnity serves to protect innocent
retailers and “member[s] of the marketing chain” that act “merely [as] a conduit for the
defective product”). Given the foregoing definition and the Supreme Court’s interpretation
of it, we must conclude, as a matter of law, that Smith was not a “seller” under the evidence
of record. 
          That Smith was in the business of providing services to oil companies in the form
of maintaining and repairing wells was undisputed. Similarly uncontested was the evidence
that Almager was a reverse unit operator for Smith. He did not sell swedge/hammer units. 
Nor did we find that part of his job or the business of Smith consisted of trading or
conveying such tools. Moreover, the “exchange” of tools was characterized as merely a
“casual” act between men working on a well.


 This scenario fails to evince effort by Smith
to “commercially distribute” the tools in question. Nor would it permit one to reasonably
infer that Smith’s “business” included distributing or placing the hammer into the stream of
commerce. Rather, the item was acquired for use by the company to perform services
others hired it to do. Simply put, it arrived in the hands of a Gray Wireline employee
through a casual, non-commercial swap. 
          Common Law Indemnity 
          As for common law indemnity, we note that the type expressly invoked by Smith was
that accorded to an innocent retailer. The latter status connotes one involved in the
business of passing or marketing the product to others. See Crane Carrier Co. v. Bostrom
Seating, Inc., 89 S.W.3d 153, 156 (Tex. App.–Corpus Christi 2002), rev’d on other grounds,
140 S.W.3d 681 (Tex. 2004) (stating that one must act as a mere innocent conduit for the
product to receive indemnity); USX Corp. v. Salinas, supra. Having previously determined
that nothing of record would permit one to reasonably infer that Smith marketed or
participated in the chain of marketing the swedge/hammer union to others, it cannot be
afforded common law indemnity as an innocent retailer.


 
          In sum, we conclude that Grinnell was entitled to summary judgment as a matter of
law on Smith’s indemnity claims. Therefore, the issues of Smith are overruled, and the
summary judgment in favor of Grinnell is affirmed. 


                                                                           Brian Quinn 
                                                                          Chief Justice 



yle="color: #000000">Phynes v. State, 828 S.W.2d 1, 2 (Tex.Crim.App. 1992); Drew v. State, 942 S.W.2d 98,
99 (Tex.App.–Amarillo 1997, no pet.) (each noting that the plain meaning of Art. 42.12, §
5(b) is that an appellant whose deferred adjudication community supervision has been
revoked and who has been adjudicated guilty of the original charge, may not raise on
appeal contentions of error in the adjudication of guilt process). One example of such an
impermissible challenge is a claim of ineffective assistance of counsel at the hearing on
the motion to adjudicate. Brown v. State, 79 S.W.3d 140, 141 (Tex.App.–Texarkana 2002,
no pet.); Cooper v. State, 2 S.W.3d 500, 504 (Tex.App.–Texarkana 1999, pet. ref’d). 
However, because appellant’s original notice of appeal made specific reference to the
issue of ineffective assistance, and the trial court gave appellant permission to appeal, we
have reviewed the record to determine whether it would support an arguably meritorious
issue on that point. We find nothing in the record to support an ineffective assistance of
counsel claim.
          We agree with appellate counsel also that no arguably meritorious issue appears
with regard to sufficiency of the evidence. At the revocation hearing, appellant plead “true”
to each of the State’s allegations of violation of the terms of community supervision. A plea
of “true” to even one allegation in the State’s motion is sufficient to support a judgment
revoking community supervision. Cole v. State, 578 S.W.2d 127, 128 (Tex.Crim.App.
1979); Lewis v. State, 195 S.W.3d 205, 209 (Tex.App.–San Antonio 2006, pet. denied). 
           The Anders brief makes reference also to the evidence supporting the affirmative
finding the court made as to appellant’s use of a deadly weapon. Appellant’s 2001
indictment gave her notice that the State would seek an affirmative finding on her use of
a deadly weapon. When appellant plead guilty to the offense later that year, she
confessed that she committed each and every allegation contained within the indictment.
This included the use of the deadly weapon. Ex parte Huskins, 176 S.W.3d 818, 820
(Tex.Crim.App. 2005).
         Lastly, we find no arguably meritorious point may be raised with regard to the
punishment assessed to appellant. While she may challenge punishment following her
adjudication of guilt, the trial court assessed punishment for appellant at fifteen years of
confinement in the Institutional Division of the Texas Department of Criminal Justice, an
acceptable term within the permissible range.


 In fact, given the enhancement of
appellant’s sentence, the trial court sentenced appellant to the lowest possible term. See
Tex. Penal Code Ann. § 12.42(a)(3) (Vernon 2007). It is the general rule that as long as
a sentence is within the proper range of punishment, it will not be disturbed on appeal. 
Jackson v. State, 680 S.W.2d 809, 814 (Tex.Crim.App. 1984). 
          Our review convinces us that appellate counsel conducted a complete review of the
record. We have also made an independent examination of the entire record to determine
whether there are any arguable grounds which might support the appeal, as permitted by
statute. We agree it presents no arguably meritorious grounds for review. We grant
counsel's motion to withdraw


 and affirm the judgment of the trial court.
 
                                                                James T. Campbell

                                                                           Justice











Do not publish.